IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD BRYANT | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 13−cv−0411−MJR−SCW<br>) |
| SAMUEL NWAOBASI, FE FUENTES,<br>JOHN SHEPHERD, and ROBERT<br>SHEARING | )<br>)<br>)<br>) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**Williams, Magistrate Judge:**

This § 1983 case, in which *pro se* Plaintiff Edward Bryant alleged deliberate indifference toward his medical needs, is before the Court on Defendants' Motion for Summary Judgment (Doc. 31) for failure to exhaust administrative remedies. The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Plaintiff exhausted his administrative remedies before filing suit. For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** the Motion in Defendants' favor.

FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2013, Edward Bryant, an inmate at Menard Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983. As relevant to this Motion, Plaintiff alleged that he has an oatmeal allergy and has repeatedly requested an oatmeal-free diet, which Defendants have denied. (Doc. 1).

1

Defendants filed the instant Motion on September 26, 2013. (Doc. 31). Plaintiff filed a Response on October 17, 2013. (Doc. 36). He filed a supplemental response on October 30, 2013. The undersigned then held a hearing on this issue on December 17, 2013, making this Motion ripe for a report and recommendation.

### PLAINTIFF'S GRIEVANCES

Plaintiff attached two grievances to his initial Complaint (Doc. 1). He attached a grievance dated October 12, 2011 that complained about his oatmeal allergy. (Doc. 1-1, p. 5). Plaintiff listed his current facility as the Northern Reception Center (NRC). (Doc. 1-1, p. 5). The counselor responded on October 28, 2011 and indicated that the grievance would be forwarded to Menard, because IDOC was going to transfer Plaintiff to that facility. (Doc. 1-1, p. 6). Plaintiff apparently forwarded this response to the grievance officer, who received it on November 1, 2011. (Doc. 1-1, p. 5). Plaintiff transferred to Menard on November 2, 2011. The grievance officer issued a report on January 5, 2012 agreeing that the issue should be referred to Menard Correctional Center. (Doc. 1-1, p. 3). The CAO concurred with the grievance officer's recommendation on January 13, 2012. (Doc. 1-1, p. 4). There is no evidence in the record that Menard Correctional Center took any action. Plaintiff testified that he forwarded this grievance to the ARB and the executive office, but received no response. Plaintiff testified inconsistently as to when he took this action. He said that he sent the grievance to the ARB within thirty (30) days. He also testified that it was sometime between receiving the grievance and filing his Complaint, a period of more than a year. He also said that he had written to the grievance officer, the ARB, and the executive office of the Illinois Department of Correction, but received no responses from any of them.

The second grievance that Plaintiff attached to his Complaint is dated January 8, 2013. (Doc. 1-1, p. 8). It discusses his allergy to oatmeal and his psych meds. (Doc. 1-1, pp. 8-10). Plaintiff does not name any of the Defendants in this grievance and does not state that the health

2

care unit ever examined him for his allergy. (Doc. 1-1, p. 10). Instead, he argues that he is entitled to a substitution when oatmeal is on the menu because he will not otherwise get his calories for the day. (Doc. 1-1, p. 10). Jay Hamilton, Plaintiff's counselor, responded to the grievance on February 26, 2013, and advised that the issue had been previously addressed on October 4, 2012. (Doc. 1-1, p. 9). He also noted that the grievance officer had no pending grievances from Plaintiff. (Doc. 1-1, p. 9). The record contains no other responses to this grievance.

Defendants attached Plaintiff's cumulative counseling summary. (Doc. 32-2). The summary shows that Plaintiff informed his counselor that he had an oatmeal allergy on December 15, 2011. (Doc. 32-2, p. 4). Hamilton told Plaintiff that Menard does not offer a special diet for food allergies. (Doc. 32-2, p. 4). Plaintiff brought the issue up with his counselor again on August 14, 2012. (Doc. 32-2, p. 3). Plaintiff apparently then grieved the issue on September 23, 2012, although that grievance is not in the record. (Doc. 32-2, p. 3). Hamilton returned this grievance on October 4, 2012. (Doc. 32-2, p. 3). There are two other entries addressing "missing" grievances. (Doc. 32-2, p. 3). Hamilton also included a note in the counseling summary that Plaintiff's January 8, 2013 grievance was a follow-up to the September 23, 2012 grievance. (Doc. 32-2, p. 3).

Defendants also called Terri Anderson of the ARB at the hearing. She testified that the ARB had not received anything from Plaintiff since 2002.

Plaintiff testified at his hearing that he believed that he filed two additional grievances at Menard prior to filing his Complaint. He testified that the first grievance named Nwaobasi, Fuentes, and Shepherd, and that he forwarded it to the grievance officer after receiving it back from the counselor but got no response. Plaintiff testified that he specifically named Shearing in the second grievance. Plaintiff could not recall any other relevant grievances, although he

attached a number of grievances to his Response that were filed subsequent to the Complaint addressing similar issues.¹

**LEGAL STANDARDS**

### 1. *Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**² The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). See also *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings.")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson*, 477 U.S. at 248**. A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001). See also *Steen v. Myers*, 486 F.3d**

---

¹ Plaintiff's claims likely fall under the "continuing violation" rubric, which would allow Plaintiff to bring suit at any time *after* he has exhausted any grievance regarding his medical treatment. Therefore, these August 2013 may be relevant to a future Complaint, even though they cannot be relevant here.
² Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011)**.

**1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Van Antwerp v. City of Peoria*, **627 F.3d 295, 297 (7th Cir. 2010). *Accord Anderson*, 477 U.S. at 248 (finding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

### 2. PLRA's Exhaustion Requirement

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[3] **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. *Pavey v. Conley*, **544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the

---

[3] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004) (citing *Wilson v. Weiter*, 501 U.S. 294, 299 n. 1 (1991) ("if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement")).

5

> case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

***Id.* at 742.**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. ***Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. ***Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. ***Id.*** But if prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. ***Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. ***See Jones v. Bock*, 549 U.S. 199, 218 (2007).**

### 3. *Exhaustion Requirement under Illinois Law*

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a).** If the Counselor does not

6

resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

## CONCLUSIONS OF LAW

The undersigned did not find Plaintiff's testimony credible. Defendants argued that Plaintiff never properly named them in his grievances. As to the October 12, 2011 grievance, the

7

undersigned agrees with Defendants that this grievance cannot exhaust Plaintiff's administrative remedies as to the current Defendants, who all work at Menard, because it was filed prior to the time that Plaintiff was incarcerated at Menard. Additionally, the ARB never received this grievance, suggesting that Plaintiff did not finish the exhaustion process with regards to that grievance. Although Plaintiff testified that he filed this grievance with the ARB, the undersigned finds his testimony not credible. For those reasons, the October 12, 2011 grievance is not sufficient to exhaust Plaintiff's remedies.

Plaintiff testified that he filed two grievances regarding his oatmeal allergy after he transferred to Menard and prior to filing this Complaint. From the record, it appears that these grievances are the September 23, 2012 grievance, and the January 8, 2013 grievance. Plaintiff's testimony was that the earlier filed grievance (presumably, the September 23, 2012 grievance) named Defendants Nwaobasi, Fuentes, and Shepherd. He also testified that the later-filed grievance (presumably, the January 8, 2013 grievance), named Defendant Shearing. Plaintiff did not submit a copy of the January 8, 2013 grievance with his Response, nor did he mention that he had previously submitted that grievance as an exhibit to his Complaint. That grievance does not name Shearing, contrary to Plaintiff's testimony. Additionally, it implicates the dietary department at Menard, not the health care unit, because Plaintiff requests substitutions for his oatmeal, not medical treatment. At the time he filed this grievance, Plaintiff was aware that there were no allergy diets at Menard. In the grievance, he does not ask to be put on a medical diet, for a physical examination, or allege that he had an allergic reaction that was not given proper medical attention. Simply put, not only does the January 8, 2013 grievance not mention any of the Defendants by name, it also does not describe a course of conduct (placing oatmeal on his tray) that could be ascribed to the medical Defendants. This grievance cannot exhaust Plaintiff's administrative remedies as to the named Defendants.

Plaintiff's counseling summary indicates that the January 8, 2013 was a follow-up to the September 23, 2012 grievance. Plaintiff testified that his first grievance named Nwaobasi, Fuentes, and Shepherd. But clearly his testimony at the hearing that he named Shearing in the second grievance was inaccurate. Additionally, given that the January 8, 2013 grievance was a follow-up, it seems inconsistent that Plaintiff would not re-name the medical defendants he allegedly complained about in the earlier grievance. Therefore, the undersigned does not accept Plaintiff's testimony that he adequately named the Defendants in the September 23, 2012 grievance. Furthermore, the undersigned rejects Plaintiff's testimony that he filed this grievance with the grievance office. There is no other evidence that Plaintiff continued the exhaustion process after he received this grievance back from his counselor. Therefore, the September 23, 2012 grievance did not exhaust Plaintiff's administrative remedies either.

The undersigned **RECOMMENDS** that the Court **GRANT** Defendants' Motion for Summary Judgment. (Doc. 31).

## Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (Docs.31) be **GRANTED**. If this Report is adopted, then all of Plaintiff's claims against Defendants for deliberate indifference to serious medical needs are dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). <u>Objections to this Report and Recommendation must be filed on or before January 3, 2014.</u>** *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

**IT IS SO RECOMMENDED.**
**DATE: December 19, 2013**                                  **/s/ *Stephen C. Williams***
                                                             **STEPHEN C. WILLIAMS**
                                                             United States Magistrate Judge