IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD BRYANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-0411-MJR-SCW |
| | ) |
| DR. SAMUEL NWAOBASI, | ) |
| DR. FE FUENTES, | ) |
| DR. JOHN SHEPHERD, | ) |
| and DR. ROBERT SHEARING, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM and ORDER

REAGAN, District Judge:

I.   **Procedural Overview**

Edward Bryant, an inmate at Menard Correctional Center, filed the above-captioned suit alleging that four physicians at Menard violated his right, secured by the Eighth Amendment to the United States Constitution, to be free from cruel and unusual punishment. The complaint alleged that Drs. Nwaobasi, Fuentes, Shepherd, and Shearing (collectively, Defendants) were deliberately indifferent to Plaintiff's serious medical condition – an allergy to oatmeal, which Plaintiff was diagnosed with before his November 2011 arrival at Menard. More specifically, Plaintiff alleged that if he eats oatmeal he will go into anaphylactic shock, that Defendants have refused to document and treat this allergy, that they have refused to give him a special food permit, that he continues to receive food trays containing oatmeal, and that he can eat nothing on the entire tray and thus fails to receive meals satisfying nutritional requirements.

The complaint survived threshold review under 28 U.S.C. 1915A in May 2013, Defendants were served, and in July 2013 Magistrate Judge Stephen C. Williams entered a trial practice schedule herein. The case comes now before the Court on Defendants' September 26, 2013 motion for summary judgment based on exhaustion, which was fully briefed (Plaintiff filed two responses to the motion) and on which Judge Williams conducted an evidentiary hearing on December 17, 2013.

On December 19, 2013, Judge Williams submitted a Report and Recommendation (Report) recommending that the undersigned District Judge grant Defendants' motion and dismiss without prejudice all of Plaintiffs' claims for deliberate indifference (Doc. 44, p. 9). Plaintiff timely filed 26-page objections to the Report (Doc. 45). Defendants failed to respond to the Objections by the January 23, 2014 deadline to do so (see Doc. 48), and the issue is ripe for determination.

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Plaintiff Bryant specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); SOUTHERN DIST. OF ILLINOIS LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.*

For the reasons stated below, the Court overrules Plaintiff's objections, adopts Judge Williams' Report in its entirety, and dismisses Plaintiffs' claims against Defendants. The Court's analysis begins with reference to the applicable legal standards.

## II. Applicable Legal Standards

### A. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012),** *citing* FED. R. CIV. P. 56(a). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *Anderson,* **699 F.3d at 994;** *Righi v. SMC Corp.,* **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).**

### B. PLRA'S EXHAUSTION REQUIREMENT

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a). That statute states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

Thus, under the PLRA, exhaustion of administrative remedies is mandatory, and unexhausted claims cannot be brought in court. *Jones v. Bock,* **549 U.S. 199, 211 (2007).**

The case may proceed on the merits only after any contested issue of exhaustion is resolved by the district court. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).**

The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).** The United States Court of Appeals for the Seventh Circuit takes a strict compliance approach to exhaustion, requiring inmates follow all grievance rules established by the correctional authority. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).** A prisoner must "file complaints and appeals in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir.),** *cert. denied*, **537 U.S. 949 (2002).**

An inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002).** However, if the prisoner fails to follow the proper procedure, the grievance will not be considered exhausted. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

Additionally, exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation. He cannot exhaust *while* his lawsuit is pending, or file suit *in anticipation* of his remedies soon being exhausted. *See Perez v. Wisconsin Department of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page,* **291 F.3d 485, 488 (7th Cir. 2002);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**

If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones*, **549 U.S. at 223;** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).** Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, allowing the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **FED. R. CIV. P. 12(d).** And exhaustion-based dismissals are made without prejudice. *Burrell*, **431 F.3d at 285**, *citing Walker v. Thompson*, **288 F.3d 1005, 1009 (7th Cir. 2002)("Dismissal for failure to exhaust is without prejudice…"), and** *Ford*, **362 F.3d at 401 (**"*all* **dismissals under § 1997e(a) should be without prejudice").**

"[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** When failure to exhaust administrative remedies is raised as an affirmative defense in a prisoner civil rights suit, the district court is to resolve the issue via the procedure delineated in *Pavey*, **544 F.3d at 742**.

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows:
>
> (1) The … judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
>
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where

prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

(3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question."  *Doss v. Gilkey*, **649 F.Supp.2d 905, 912 (S.D. Ill. 2009).**

    C.    <u>EXHAUSTION REQUIREMENTS UNDER ILLINOIS LAW</u>

As an inmate confined within the Illinois Department of Corrections (IDOC), Plaintiff Bryant was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims.  **20 Ill. Administrative Code 504.800,** *et seq.*

The grievance procedures first require inmates to speak with the counselor about their complaints.  **20 Ill. Admin. Code 504.810(a).**  Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id.*  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person

who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(a)(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer … [who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).**

If the inmate is not satisfied with the Chief Administrative Officer (CAO)'s response, he can file an appeal with the Director through the Administrative Review Board (ARB). And, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the CAO's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).**

If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO informs the inmate of the decision, the inmate may appeal that decision to the ARB on an expedited basis. *Id.*, **504.850(g).**

IV.     Analysis

In the case *sub judice*, Plaintiff provided two grievances with his complaint (filed on April 29, 2013) – an October 12, 2011 grievance and a January 8, 2013 grievance.

On the **October 12, 2011 grievance**, Plaintiff checked the boxes for "dietary" and "medical treatment" and complained that he had been served oatmeal, despite having advised medical personnel when he arrived (six days earlier) that he was allergic to oatmeal. This grievance was filed while Plaintiff was housed at the Northern Reception and Classification Center (NRC), *before* he was transferred to Menard. NRC is a male intake processing unit for Illinois prisoners who are awaiting transfer to a permanent institution. It is located at Stateville Correctional Center, in Joliet, Illinois.

The counselor responded on October 28, 2011 (Doc. 1-1, p 6) noting: "A copy of this grievance has been forwarded to the HCU for review and response, and the

original forwarded to the grievance officer." Grievance Officer Anna McBee (at Stateville) received the grievance on November 1, 2011. She issued a report on January 5, 2012, recommending that the issue be referred to Menard Correctional Center, because Plaintiff had been transferred to Menard on November 2, 2011. On January 13, 2012, CAO Marcus Hardy concurred with the grievance officer recommendation.[1] There is no evidence in the record before the Court that Menard took action on this grievance filed by Plaintiff at NRC.

At the Pavey hearing before Judge Williams, Plaintiff testified that he forwarded this grievance to the ARB and the executive office of the IDOC and got no response. Plaintiff's testimony regarding when he took this action was inconsistent and vague (he pinned down the date only to a period of roughly a year). Plaintiff also claimed to have written the grievance officer, the ARB, and the executive office about this October 2011 grievance.

The October 2011 grievance (filed while Plaintiff was housed in NRC at Stateville) cannot satisfy his exhaustion duty as to the allegations of his complaint before this Court (which are directed at Menard officials). In other words, the undersigned District Judge concludes (as did Judge Williams) that the October 2011 grievance does not exhaust Plaintiff's administrative remedies as to the named Defendants herein (who all work at Menard), because it was filed before Plaintiff was incarcerated at Menard.

---

[1] Marcus Hardy appears to have been the Warden (and CAO) at Stateville Correctional Center at the time of Plaintiff's October 2011 grievance filing.

Furthermore, the record shows that Plaintiff failed to appeal this grievance to the ARB. Judge Williams has found Plaintiff's testimony to the contrary not credible (Doc. 44, p. 8), and -- as Defendants argued in their summary judgment motion -- Plaintiff's complete IDOC grievance file contains no document indicating that Plaintiff appealed to the ARB.

In his objections to Judge Williams' Report, Plaintiff maintains that the counselor at Stateville told Plaintiff that the grievance would "follow" him and "still be good" when he got transferred. Plaintiff also asserts that no matter where he was housed, "this has always been a 'medical issue'" (Doc. 45, p. 4). These arguments miss the mark. The Court finds that Plaintiff did not appeal this grievance to the ARB, so he did not complete the IDOC exhaustion process. Moreover, the October 12, 2011 grievance (complaining of events at Stateville/NRC) could not and did not satisfy the exhaustion requirements for the instant lawsuit (filed against officials working at Menard).

Also attached to Plaintiff's complaint was a **January 8, 2013 grievance** (Doc. 1-1, pp. 8-10). On the January 8, 2013 grievance, Plaintiff notes that he filed a grievance roughly four months before (which would have been September 2012), and after sending it to the grievance officer had received nothing back, had followed up with Counselor Hamilton, and has not heard anything back from him either. Plaintiff further explains that the matter he is attempting to raise "is about me being allergic to oatmeal." He states that contact with oatmeal gives him serious headaches, ingestion to oatmeal could cause anaphylactic shock, and without a dietary/meal substitution for

oatmeal, he lacks the required daily caloric intake (Doc. 1-1, p. 8, 10).[2]

The January 8, 2013 grievance (to which Counselor Jay Hamilton responded on February 26, 2013; Doc. 1-1, p. 9) does not name any of the Defendants from the instant case. This grievance does not ask for a physical examination. It does not allege that an allergic reaction occurred or went without prompt medical treatment. As Judge Williams concluded, the January 8, 2013 grievance implicates the *dietary* department at Menard, not the health care unit, since Plaintiff was requesting meal substitutions in place of oatmeal (not medical treatment). Plaintiff's complaint in this grievance – that he is being given meal trays containing oatmeal – is not conduct which cannot be ascribed to the four physicians named as Defendants in this lawsuit. The prison doctors are not alleged to have put the items on Plaintiff's meal tray, and they are not alleged to have failed to treat Plaintiff following an allergic reaction. The January 8, 2013 grievance did not exhaust Plaintiff's administrative remedies as to the four doctors he named as Defendants in this lawsuit.

That accounts for the two grievances submitted with Plaintiff's complaint. But what of the mention of other grievances filed at Menard? The records before the Court indicate that Plaintiff also filed a **September 23, 2012 grievance.**

---

[2] The January 8, 2013 grievance also complained that Plaintiff had not been receiving his "psych meds" for about three weeks (Doc. 1-1, p. 10). The above-captioned lawsuit, however, does *not* raise a claim for denial of psychiatric medication or treatment. As explained in the threshold review Order, Plaintiff's lawsuit presents an Eighth Amendment deliberate indifference claim based on Defendants' refusal to treat Plaintiff's oatmeal allergy and denial of a special food/dietary permit that would require meal substitutes for oatmeal (Doc. 6, p. 1).

As noted above, the September 2012 grievance is referenced in the January 8, 2013 grievance documentation. The record before the Court does not contain a copy of the September 23, 2012 grievance itself. We know that Jay Hamilton, Plaintiff's Counselor at Menard, returned this grievance on October 4, 2012. The cumulative counseling summary furnished with Defendants' summary judgment brief (at Doc. 32-2, p. 3) states: "HAMILTON, JAY E., Correctional Counselor II. Answered offender's grievance about an oatmeal allergy … dated 9/23/12 and … received on 10/2/12. The HCU, medical records was contacted and advised that there is no documentation about an allergy to oatmeal in his record…. Grievance returned to the offender."[3]

Apparently Plaintiff's January 8, 2013 grievance was a "follow-up" to the September 23, 2012 grievance. Magistrate Judge Williams rejected as inconsistent and not credible Plaintiff's testimony that he named the four Defendants from this lawsuit in the September 23, 2012 grievance.

Even if the undersigned District Judge had reason to differ with Judge Williams' credibility determination (which he does not), the record before the Court contains no evidence that Plaintiff continued the exhaustion process any further after getting the September 23, 2012 grievance back from Counselor Hamilton on October 4, 2012. This was confirmed by testimony from Terri Anderson of the ARB at the December 2013 Pavey hearing. Therefore, the September 23, 2012 grievance did not exhaust Plaintiff's administrative remedies as a prerequisite to this lawsuit.

---

[3] This summary also discloses that Plaintiff was seen in his cell on 12/15/11 by Counselor Hamilton and advised that, per HCU, there are no special diets for food allergies at Menard (Doc. 32-2, p. 4).

In objecting to Judge Williams' Report, Plaintiff offered the affidavit of Sean Wilson, an inmate who was housed with and near Plaintiff at Menard during various times. Wilson attests that Plaintiff showed him several grievances he wrote, that the inmates "are always asking Counselor Hamilton about when they are going to get their grievances back from him," and that it seems Hamilton is "holding on to" the grievances longer than necessary to prevent inmates proceeding to the next stage of the exhaustion process (Doc. 45, pp. 23-24). Wilson also states that he "always got strange vibes from Counselor Hamilton that he was given Inmate Bryant [Plaintiff] the run-around before Inmate Bryant filed suit on those doctors" (Doc. 45, p. 24).

This testimony does not assist Plaintiff in the case sub judice, because (a) the fact that Plaintiff filed several grievances is not dispute and not dispositive; and (b) as to Hamilton allegedly dragging his feet in returning grievances to inmates, the records in this particular case show that the counselors timely responded to Plaintiff's grievances, and it was Plaintiff who failed to take the required next step in the exhaustion process.

Finally, in opposing Defendants' summary judgment motion, Plaintiff attached an August 26, 2013 grievance which *does* name one of the Defendants herein (Defendant Shearing) and relates to failure to treat a medical condition, something other than the oatmeal allergy (*see* Doc. 36, pp. 12-15). Clearly the August 2013 grievance was filed *after* Plaintiff commenced the above-referenced lawsuit. So although it may be relevant to another or future lawsuit, it cannot satisfy the requirement that Plaintiff exhaust his administrative remedies on his deliberate indifference claim against the named Defendants herein *before* filing this suit in federal court.

## V. Conclusion

For all these reasons, the Court overrules Plaintiffs' objections, **ADOPTS** in its entirety Judge Williams Report and the findings contained therein (Doc. 44), **GRANTS** Defendants' summary judgment motion (Doc. 31), and **DISMISSES without prejudice**, for failure to exhaust prior to filing suit, all of Plaintiffs' deliberate indifference claims herein. No claims remaining herein, the Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

DATED February 12, 2014.

s/Michael J. Reagan
Michael J. Reagan
United States District Judge